**Mildred B. KIEFFER, Administratrix of the Estate of Edward Hoover Kieffer, Deceased,**

v.

**WALSH CONSTRUCTION CO., B. Perini & Sons, Inc., S. J. Groves & Sons Co., Inc., Slattery Contracting Co., Inc., Patterson-Emerson-Comstock, Inc., Hewitt-Robbins, Inc., Sargeant & Wilbur, Inc., C. J. Langenfelder & Sons, Inc., Allied Chemical & Dye Corp. (Wilputte Coke Oven Division).**

**Civ. A. No. 15802.**

United States District Court
E. D. Pennsylvania.

April 13, 1956.

Alan Kahn (of Richter, Lord & Levy), Philadelphia, Pa., for plaintiff.

J. Paul Erwin, George D. Sheehan, Philadelphia, Pa., for defendant Hewitt-Robbins, Inc.

John B. H. Carter (of Pepper, Bodine, Frick, Scheetz & Hamilton), Philadelphia, Pa., for defendant Allied Chemical & Dye Corp.

VAN DUSEN, District Judge.

Two of the defendants (Hewitt-Robbins, Inc., hereinafter called Hewitt-Robbins, and Wilputte Coke Oven Division of Allied Chemical & Dye Corporation, hereinafter called Wilputte) have filed motions for summary judgment under Rule 56, Fed.Rules Civ.Proc. 28 U.S.

C.A., in a suit alleging negligence causing the death of plaintiff's decedent.

On September 19, 1952, plaintiff's decedent, Edward Hoover Kieffer, was killed while working as a structural iron worker for the Penn Southern Construction Company (hereinafter called Penn Southern), which was participating in the construction of a coke oven plant, at the Fairless Works of the United States Steel Company on that date.[1] Mr. Kieffer sustained his fatal injuries when a large wooden saw horse fell from a great height and struck him on the head when he was near the "coal mixing building" at the Fairless Works.[2]

The eight separate defendant companies were apparently engaged in various operations on the coke oven plant project at the United States Steel Company's Fairless Works. The defendants filing this motion contend that Wilputte was the general contractor in charge of the construction of the coke oven project for the United States Steel Company's Fairless Works on which Kieffer was working when injured, that Hewitt-Robbins was a subcontractor of Wilputte, and that Penn Southern was a subcontractor of Hewitt-Robbins. In view of these alleged facts, these defendants argue that they were the statutory employers of the decedent within the terms of the Pennsylvania Workmen's Compensation Act, 77 P.S. §§ 52, 461 and 462, and that, under the provisions of that Act, the decedent's administratrix is limited to the remedies provided in Article III of that Act as against these two defendants.[3]

Since Wilputte and Hewitt-Robbins occupied or controlled the property near this coal mixing building, where plaintiff's decedent was injured,[4] if Penn Southern was a subcontractor of Hewitt-Robbins and Hewitt-Robbins was a subcontractor of Wilputte while all three were engaged in the coke oven plant project, plaintiff's decedent was their statutory employee and plaintiff cannot recover from them more than the payments provided for in the Workmen's Compensation Act which she is receiving.[5] See Rivera v. Turner Construction Co., D.C.E.D.Pa.1955, 135 F.Supp. 553, and cases there cited.[6]

Plaintiff opposes this motion, contending that there are not sufficient facts es-

---

1. See paragraph 4 of Requests for Admissions filed 10/18/55, which was insufficiently denied. See Dulansky v. Iowa-Illinois Gas & Electric Co., D.C.S.D.Iowa 1950, 92 F.Supp. 118; Southern Ry. Co. v. Crosby, 4 Cir., 1953, 201 F.2d 878, 36 A.L.R.2d 1186. The affidavit dated 3/23/56 of H. A. Schaefer stated that on the date of the accident all the employees of Penn Southern were doing work on the premises. See also allegations of Complaint and Answers to Interrogatories directed to plaintiff.

2. Paragraph 12 of Complaint and Answer to Interrogatory No. 44, filed 3/16/56.

3. 77 P.S. § 462 provides, inter alia:
   " * * * any such laborer (or) assistant, who shall enter upon premises occupied by or under control of such employer, for the purpose of doing such work, shall be conclusively presumed to have agreed to accept the compensation provided in article three, in lieu of his right of action under article two * * *."
   Article II of the Act (see 77 P.S. §§ 41 & 51) provides for liability of an employer and statutory employer without limit for injuries resulting from negligence.

4. See uncontradicted affidavits of 4/6/56 (Earl J. Hurd of Wilputte) and of 4/9/56 (H. A. Schaefer of Hewitt-Robbins) which also show that the decedent was covered by the Workmen's Compensation Act, and Paragraph 2 of plaintiff's Answer filed 12/9/55 to Requests for Admissions; cf. Paragraph 26 of Wilputte's Answers to Interrogatories filed 4/12/55.

5. See Requests for Admissions filed 1/24/56 directed to plaintiff which have never been answered or objected to and, hence, are deemed to be admitted. See F.R.Civ.P. 36.

6. See, particularly, Qualp v. James Stewart Co., 1920, 266 Pa. 502, 109 A. 780, involving a contractor, a subcontractor, a second subcontractor, and the employee of such second subcontractor, similar to the factual situation involved in this case. Cf. Menginie v. Savine, 1952, 170 Pa.Super. 582, 88 A.2d 106, allocatur refused, 170 Pa.Super. XXVI.

tablished by the record [7] to justify the entry of summary judgment.

## I. Relationship between United States Steel Company and Wilputte.

A contract between United States Steel Company and Wilputte for the installation by the latter of "* * * two batteries, 87 ovens each, of Wilputte Underjet Coke Ovens, and auxiliary equipment * * *"[8] at the Fairless Works is clearly established by the portion of the record referred to below.

Wilputte, through its Executive Vice-President, D. M. Griffith, sent to United States Steel Company a letter dated 1/9/51[9] "* * * to express all details of understanding and responsibilities which have been mutually accepted by Wilputte and United States Steel Company in connection with the execution of the contract." (page 1 of letter.) Thereafter, the proposed terms of the contract are set out in great detail in this ten-page letter, which also enclosed specifications consisting of 11 pages. The next to the last paragraph of the letter (page 10) provides as follows:

"This letter is subject to acceptance within thirty (30) days from the date hereof, and shall in no event become a commitment between us until your acceptance hereof has been approved in writing by us."

United States Steel Company replied to this letter by means of a purchase order dated 7/20/51. This order contained the following language:

"Please furnish us in accordance with all conditions specified in this purchase order * * * the following:

\* \* \* \* \* \*

"Two (2) Complete Coke Oven Batteries, consisting of eighty-seven (87) By-Product Coke Ovens, and Auxiliary Facilities, ready for operation, at our Fairless Works Coke Plant, Morrisville, Bucks County, Pennsylvania, in accordance with our Specification No. F2–884–C, dated October 20, 1950, as revised January 9, 1951, and your letter dated January 9, 1951. * * *"

Also, the balance of the order gives other indications of embodying the terms of Wilputte's letter of January 9, 1951, and its enclosed Specifications by United States Steel Company, the most important of which is the following:

"Terms: As set out in said Wilputte's letter dated January 9, 1951 * * *." (See page 1 of Purchase Order dated 7/20/51).

This purchase order was accepted by Wilputte by letter dated July 27, 1951, signed by D. M. Griffith.

---

7. The record consists of Requests for Admissions, including contracts consisting of letters, purchase order, specifications, etc., attached thereto, uncontradicted affidavits, admissions in pleadings, and answers to interrogatories. Plaintiff has filed no affidavits challenging any of this material in the record. It is noted that much of the material in the affidavits of 1/26/56, 1/30/56 and 3/26/56, mentioned on pages 6 & 7 of this opinion, is also admitted by the failure of the defendant to deny effectively the Requests for Admissions filed 10/18/55. See the cases cited in footnote 1 and Hanauer for Use of Wogahn v. Siegel, D.C.N.D.Ill.1939, 29 F.Supp. 329; Van Horne v. Hines, D.C.D.C.1940, 31 F.Supp. 346, 348. At the least, the fact that the plaintiff has not shown on the record any effort to get facts to deny the Requests for Admissions during a period of a year-and-a-half must be taken into consideration along with defendants' uncontradicted affidavits on the subject of such Requests.

8. See page 1 of letter dated 1/9/51 from Wilputte to United States Steel Company.

9. The letters of 1/9/51 and 7/27/51, as well as the purchase order of 7/20/51, are attached as Exhibit A to the Requests for Admissions filed 10/18/55 and are supported by affidavit of Earl J. Hurd dated 1/26/56.

## II. Relationship between Wilputte and Hewitt-Robbins.

Plaintiff does not deny that a binding contract existed between Wilputte and Hewitt-Robbins.[10] This contract, dated 8/2/51 (attached to Requests for Admissions as Exhibit B) required Hewitt-Robbins to " * * * furnish and deliver to site of work all the materials, equipment and tools, and perform as an independent contractor * * * all of the labor and engineering required to design, construct and erect the following:

"(a) Coal Handling Equipment * *

"(b) Coal spillage equipment * * *

"(c) Coke Handling Equipment * *."

The uncontradicted affidavit dated 1/30/56 of R. D. Crowley, Purchasing Agent of United States Steel Company, asserts that the phrase "Eighty-seven (87) coke ovens, and auxilliary facilities" in its contract with Wilputte " * * * includes Coal Handling Equipment, Coke Handling Equipment and Coal Spillage Equipment * * *." The uncontradicted affidavit dated 1/26/56 of Earl J. Hurd, Assistant Secretary of Wilputte, is to the same effect.[11] Furthermore, the uncontradicted affidavit dated 3/26/56 of H. A. Schaefer, Secretary-Treasurer of Hewitt-Robbins, states:

> " * * * that Hewitt-Robbins, Inc., on or about September 19, 1952, was performing subcontract work on said 'Coal & Coke Handling System' for Wilputte Coke Oven Division,

pursuant to a contract between Wilputte Coke Oven Division and United States Steel Company; * * *."

For these reasons, the record establishes that Hewitt-Robbins was a subcontractor of Wilputte.

## III. Relationship between Hewitt-Robbins and Penn Southern.

The uncontradicted affidavit of H. A. Schaefer, dated 3/26/56, states:

> " * * * that the phrase, Coal and Coke Handling Equipment or System, in the contract [between Wilputte and Hewitt-Robbins][10] included the 'Coal & Coke Handling System for the United States Steel Company Fairless Works' * * *." [as these words are used in the contract between Hewitt-Robbins and Penn Southern, which is Exhibit C attached to Requests for Admissions].

Thus, the record shows clearly that Penn Southern is a subcontractor to both Wilputte and Hewitt-Robbins.[12] In addition, the record shows that on the date of the accident, all the employees of Penn Southern on the premises were doing work under the above-mentioned contracts.[13]

In view of the facts contained in this record, the defendants Wilputte and Hewitt-Robbins are entitled to the entry of summary judgment in their favor. See Shafer v. Reo Motors, Inc., 3 Cir., 1953, 205 F.2d 685.

---

10. Exhibit B attached to Requests for Admissions filed 10/18/55.

11. It is to be noted that the warranty of Hewitt-Robbins under its contract with Wilputte also runs to United States Steel Company, on whose land plaintiff was working when injured. The Crowley affidavit states that the land on which the construction was taking place was owned by United States Steel Company.

12. The affidavit of H. A. Schaefer dated 3/26/56 uses this language:
    " * * * and that the phrase, 'Coal & Coke Handling System for the United States Steel Company Fairless Works', referred to on page 1 of the contract between Hewitt-Robbins and Penn-South-

ern, referred to construction being performed under the phrase, Coal and Coke Handling Equipment or System, in the Purchase Order No. 100–304–C, dated 8/2/51, from Hewitt-Robbins to Wilputte Coke Oven Division, (Exhibit 'B'); * * *."
The contract between Penn Southern and Hewitt-Robbins is attached to Requests for Admissions filed October 18, 1955, as Exhibit C.

13. See uncontradicted Schaefer affidavit of 3/26/56. This answers the argument raised by plaintiff on page 4 of her brief to the effect that Penn Southern may have held other contracts and that decedent may have been employed on one of these other contracts.