528 A.2d 962

**Linda T. GRANT, Administratrix of the Estate of James Michael Grant, Deceased**

v.

**RIVERSIDE CORPORATION, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 22, 1987.

Filed May 21, 1987.

Reargument Denied July 31, 1987.

Richard L. Rosenzweig, Pittsburgh, for appellant.

Allan H. Cohen, Pittsburgh, for appellee.

Before BROSKY, DEL SOLE and CERCONE, JJ.

BROSKY, Judge:

This is an appeal from the denial of post-trial relief below, following a jury trial in which a verdict of $2,138,548.00 was entered in appellee's favor. Appellant raises seven contentions:

(1) does the Pennsylvania Workmen's Compensation Act permit the injured employee of a subcontractor to sue another subcontractor working on the same job site for tort damages?;

(2) was appellee's expert witness permitted to testify to matters beyond his competence?;

(3) was it error for the trial court to refuse to charge the jury that assumption of the risk is a defense in products liability actions?;

(4) did appellee's counsel make an improper "adverse inference" argument, concerning appellant's decision not to call a witness, in his closing?;

(5) did appellee argue a theory of liability not present in the complaint?;

(6) did appellee fail to sustain her burden of proof?; and

(7) was the damage award the product of passion and sympathy?

After careful consideration of the record below and the briefs presented to this Court, we fail to find any error in the trial court's resolution of the above-enumerated contentions, and accordingly affirm.

This suit arises from an accident which occurred on June 15, 1981, during the construction of the One Oxford Centre building in Pittsburgh. The general contractor on the project was Turner Construction Company (hereinafter "Turner"). Turner hired both Riverside Corporation ("Riverside") and ("Reiling") as subcontractors on the project.[1] It was the function of Riverside, pursuant to the agreement, to install a double-well material hoist, which is, in essence, an elevator that is used to carry materials up and down during construction. Reiling, on the other hand, was to provide miscellaneous metal work, as well as skilled ironworkers, for the project. Decedent was an ironworker for Reiling.

---

**1.** Turner was not joined in this lawsuit. As decedent's "statutory employer", a concept to be discussed at greater length *infra,* Turner was immune from suit pursuant to the Workmen's Compensation Act, 77 P.S. § 1, et seq. Likewise, Reiling, as decedent's employer, was immune from suit under the Act. *Id.*

The material hoist tower erected by Riverside was approximately seven feet away from the outside framework of the building. In order to construct platforms between the edge of the hoist car and the side of the building, certain diagonal and horizontal braces had to be removed from the side of the hoist car facing the seven foot gap. To do this, ironworkers in the hoist car had to remove the nut attached to the bolt which kept the braces in place.

On the date of the accident, decedent was attempting to remove the braces in order to create access for the building of a platform to the twelfth floor. However, after removing the nut, the bolt holding the braces in place would not come off. Attempting to loosen them, decedent pushed on the braces, which unexpectedly sprang off the bolt in a direction going away from the decedent. Decedent lost his balance, and fell out of the car into the seven-foot gap, landing on the seventh floor. He was pronounced dead at the local hospital.

Appellee, decedent's widow, filed suit against Riverside on theories of products liability and negligence with respect to the design and manufacture of the hoist car. Following an eight day jury trial and a verdict in appellee's favor, post-trial motions were filed and denied. This timely appeal followed.

The trial court issued an extensive opinion which we feel adequately addresses six of the seven contentions on appeal. As such, we shall only be addressing Issue I: does the Pennsylvania Workmen's Compensation Act preclude the employee of a subcontractor from bringing a tort action against another subcontractor on the same job site?

Initially, we must state that this would appear to be a case of first impression in Pennsylvania. While this trial court cited as conclusive authority the holding in *McKenzie v. Cost Brothers, Inc.*, 487 Pa. 303, 409 A.2d 362 (1979), for the proposition that such suits are not barred, appellant is correct in pointing out that the *McKenzie* decision does not interpret, or even mention, the Workmen's Compensation Act, or if the Act was raised as a defense by the appellant.

Rather, *McKenzie* limits its analysis to a discussion of the duties of care owed by a possessor of land to warn invitees of known or discoverable dangerous conditions.[2] Hence, we deem it necessary to scrutinize the Act itself, and to determine if the language of the Act is in accord with the result reached in *McKenzie*.

Section 303 of the Act[3] is our starting point, as it is Section 303 that sets forth the extent to which the Act is intended to be the exclusive means of recovery for employment-related injuries:

§ 481. Exclusiveness of remedy; actions by and against third party; contract indemnifying third party.

(a) *The liability of an employer under this act shall be exclusive* and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

(b) In the event injury or death to an employe *is caused by a third party,* then such employe, his legal representative, husband or wife, parents, dependents, next of kin and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, *but the employer,* his insurance carrier, their servants and agents, *employes, representatives acting on their behalf or at their request shall not be liable to a third party* for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action. (Emphasis supplied).

**2.** See *McKenzie,* supra, pp. 364–366, and the discussion therein of the Restatement of Torts, Second, Sections 343 and 384.

**3.** 77 P.S. § 481, as amended.

Clearly, then, our determination of the Act's applicability to subcontractors shall turn upon the resolution of a key question: is a subcontractor an "employee" or "representative" of the general contractor, and thereby entitled to immunity on an equal footing with the direct employer of the aggrieved party, or a mere "third party" subject to common law tort liability?

The Act itself does not define "third party", thereby "opening the door", as it were, to appellant's contention that the legislature intended the exclusivity protections of the Act to encompass all contractors and subcontractors present at the same job site. According to appellant, the statutory scheme of the Act suggests that subcontractors in the position of Riverside and Reiling should be immune from common law liability for injuries to each other's employees on one of two theories: either (1) as "employees" or "representatives" of the general contractor, and, as such, "fellow employees" in a "common employment" pool; or (2) as subcontractors entrusted with part of the regular business of the general contractor, and, as such, afforded protection via the general contractor's status as the "statutory employer" of both subcontractors' employees. In support, appellant directs this Court's attention to the compensation acts of several other jurisdictions, maintaining that they bear sufficient similarity to various provisions in the Pennsylvania Act so as to permit immunity to be extended to appellant under one or both theories. We disagree with appellant's analysis.

■ With respect to appellant's initial suggestion that we view Riverside and Reiling as "fellow employees", we note that the suggested construction of the term "employee" is directly contrary to express legislative intent. "Employee" is defined, in Section 104,[4] as:

> "[A]ll *natural persons* who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, and exclusive of

4. 77 P.S. § 22, as amended.

persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished or repaired, or adapted for sale in the worker's own home, or on other premises, not under the control or management of the employer. Every executive officer of a corporation elected or appointed in accordance with the charter and by-laws of the corporation, except elected officers of the Commonwealth or any of its political subdivisions, shall be an employe of the corporation except as hereinafter provided in sections 302(c), 305 and 321." (Emphasis supplied).

By contrast, the term "employer" is defined, at Section 103,[5] to include:

"... natural persons, *partnerships, joint-stock companies, corporations for profit,* corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." (Emphasis supplied).

Clearly, the definition of "employee" has been limited by the legislature to natural persons only. Where the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Furthermore, the general statutory maxim, *expressio unius est exclusio alterius* would appear applicable: that which is not included should be understood as excluded. Certainly, had the legislature wished to accord corporations such as Riverside and Reiling the potential status of "employees", it was free to include in its definition of "employee", as in its definition of "employer", business entities such as corporations. We cannot but deem the omission to be of some significance.

Moreover, the compensation acts of other jurisdictions which hold subcontractors to be "fellow employees" are not comparable to the Pennsylvania Act, contrary to appellant's assertions. A notable example is the Nevada Industrial Insurance Act, which is cited in appellant's brief. The Nevada Act provides, in relevant part, at NRS § 616.085, that "(S)ubcontractors and their employees shall be deemed

5. 77 P.S. § 21, as amended.

to be employees of the principal contractor." The Supreme Court of Nevada has interpreted NRS § 616.085 as extending immunity to all subcontractors on the same job site, as "employees" of the principal contractor. See *Cardenas Vda de Aragonez v. Taylor Steel Co.*, 85 Nev. 718, 462 P.2d 754 (1969). The Pennsylvania Act does not contain any such provision and, in point of fact, the Nevada Act is recognized as "uniquely different from the industrial insurance acts of other states in that ... subcontractors ... are accorded the status of employees." *Cardenas*, supra.

In light of the foregoing, appellant's initial suggestion that we construe subcontractors Riverside and Reiling to be "fellow employees" of the general contractor Turner, finds no support in the Act, and fails to persuade.

█ Appellant's second theory for subcontractor immunity hinges upon Turner's status as statutory employer of both Riverside and Reiling's employees. Appellant contends that Riverside was entrusted with a part of Turner's regular business through the subcontract, and, as such, should be afforded Turner's protection. This, however, is simply not the law in Pennsylvania with respect to the concept of statutory employer immunity.

Statutory employer immunity is derived from Section 203 [6] of the Act, which provides:

> "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe."

This provision has been construed on several previous occasions by the appellate courts of this Commonwealth to impose five requirements which must be satisfied before a contractor may claim immunity as the statutory employer

6. 77 P.S. § 52, as amended.

of another contractor's employees. The statutory employer relationship is established when the following conditions are present: (1) An employer who is under contract with an owner or one in the position of an owner ...; (2) Premises occupied by or under the control of such employer ...; (3) A subcontract made by such employer ...; (4) Part of the employer's regular business entrusted to such subcontractor ...; (5) An employee of such subcontractor.

See *Cranshaw Construction, Inc. v. Ghrist,* 290 Pa.Super. 286, 434 A.2d 756, 757 (1981), citing *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 295, 153 A. 424, 426 (1930).

Clearly, from a review of the above criteria, it is not mandatory that a contractor be the *general* contractor on a construction project to qualify as a statutory employer. A subcontractor under contract with the owner or with a contractor in the position of the owner, in sole or common control of the job premises, that subcontracts a part of its regular business to a second subcontractor, could qualify as a statutory employer of the second subcontractor's employees. See *Kieffer v. Walsh Construction Co.,* 140 F.Supp. 318 (E.D.Pa.1956) (subcontractor in joint control of work premises with general contractor, subcontractor hired second subcontractor; held, first subcontractor statutory employer of second subcontractor's employee-decedent). However, the key element missing from the current situation is a vertical relationship between Riverside and Reiling. Even were we to find that Riverside was in joint control of the work premises with Turner, Riverside did not subcontract Reiling. Rather, both Riverside and Reiling were subcontracted by Turner. Hence, Riverside was not obligated, under Section 302(a) [7] of the Act to provide compensation

7. 77 P.S. § 461, as amended, which provides:
  "A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor unless the subcontractor primarily liable for the payment of such compensation has secured its payment as provided for in this act. Any contractor or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor...."

insurance for Reiling's employees, and cannot now claim the right to stand in Turner's shoes.

Appellant attempts to analogize the statutory employer provision of the Pennsylvania Act to the compensation acts of those jurisdictions which do not require a vertical relationship between subcontractors before the general contractor's immunity is extended to all subcontractors present at the job site. Appellant proffers that the time has arrived in Pennsylvania for the immunities of our Act to be extended in like fashion. However, upon closer examination, the compensation acts of those states which have adopted this "minority" rule,[8] are not as similar to the Pennsylvania Act as appellant would have us believe.

Two examples cited in appellant's brief as virtually "identical" to the Pennsylvania Act are the acts of Virginia and Florida.

The Virginia Workmen's Compensation Act provides that, once an employer provides insurance coverage for his employees, that "[while] such insurance remains in force, he [the employer] *or those conducting his business* shall only be liable to an employee for personal injury or death by accident to the extent and in the manner herein specified." See *Turnage v. Northern Virginia Steel Corporation,* 336 F.2d 837 (4th Cir.1964), citing Va.Code § 65–99. (Emphasis supplied.) Clearly, this language is distinguishable from our Section 203, in its explicit extension of immunity to all contractors and subcontractors present at the job site and conducting the business of the injured employee's direct employer. Section 203 contains no such blanket extension of immunity, but, rather, limits immunity by its terms to those contractors in a vertical employment relationship.

Similarly, the Florida Workmen's Compensation Statute provides, in relevant part:

"Liability for compensation (1) Every employer coming within the provisions of this chapter, including any brought within the chapter by waiver of exclusion or of

8. See Larson, *Workmen's Compensation Law,* Vol. 2A, § 72.32 (1983).

exemption, shall be liable for and shall secure the payments to his employees of the compensation payable under §§ 440.13, 440.15 and 440.16. In case a contractor sublets any part or parts of his contract work to a subcontractor or subcontractors, *all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment,* and the contractor shall be liable for and shall secure the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment." F.S. Sec. 440.10. (Emphasis supplied.)

Once again, by explicit reference, the Florida Statute places all contractors and subcontractors at a job site on an equal footing with respect to each other's employees; [9] all are deemed immune as "sharing the burdens of the act, either directly by the assumption of coverage for some of the employees on the job or indirectly because of the effect of compensation liabilities upon the terms of [their] subcontract[s] and relations with the general contractor." See *Carter v. Sims Crane Service, Inc.,* 198 S.2d 25 (Fla.1967). The vertical relationship language present in Section 203 is conspicuously absent, and, in fact, negated by the provisions of F.S. § 440.10. Appellant's attempt at analogy, once again, fails.

In *Stipanovich v. Westinghouse Electric Corporation,* 210 Pa.Super. 98, 231 A.2d 894, 898 (1967), Judge Hoffman stated the following with respect to the extension of statutory employer immunity:

"... very great care ... must be exercised before allowing an employer to avoid his liability at common law by asserting he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designated to extend benefits to workers, should not be casually con-

---

9. It is also noteworthy that F.S. § 440.10 contains the type of "common employment" language often found in the acts of those jurisdictions which hold all subcontractors immune as "fellow employees" of the general contractor.

verted into a shield behind which negligent employers may seek refuge...."

On the basis of our foregoing analysis, we do not conclude that Section 203 was intended to blanketly eliminate the common law liability of subcontractors for the employees of other subcontractors. Until such time that either the legislature amends Section 203 to provide blanket immunity, or the Supreme Court overturns the requirements set forth in *McDonald,* supra, we hold that the common law liability of subcontractors, as reiterated in *McKenzie, supra,* has not been abrogated by the Workmen's Compensation Act.

Judgment affirmed.