**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID LEROY SMITH | |
| Appellant | No. 1136 MDA 2014 |

Appeal from the Judgment of Sentence June 24, 2014
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001720-2013

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED MARCH 03, 2015**

Appellant, David Leroy Smith, appeals from the aggregate judgment of sentence of 72 hours' to six months' imprisonment plus fines, imposed after the trial court found Appellant guilty of driving under the influence – general impairment (DUI), DUI - high rate of alcohol, and restriction on alcoholic beverages.[1]  After careful review, we affirm.

The certified record reveals the following factual and procedural history of this case.  On July 7, 2013, Officer Andrew Berry of the Bellefonte Borough Police Department was on patrol duty.  N.T., 2/11/14, at 5.  At approximately 1:50 a.m., Officer Berry observed and began to follow a

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), and 3809(a), respectively.

green Saturn sedan. *Id.* at 5, 11. Officer Berry observed the vehicle stop at a stop sign, at which point the three brake lights on the rear of the vehicle turned on simultaneously. *Id.* at 5-6, 8. Officer Berry then observed the vehicle's right turn signal activate, and the vehicle began to accelerate. *Id.* at 6. When the vehicle began accelerating, Officer Berry observed two of the three brake lights extinguish while one brake light remained illuminated. *Id.* at 6, 8.

Upon observing the performance of the brake lights, Officer Berry activated his emergency lights and pulled over the vehicle. Affidavit of Probable Cause, 7/23/13, at 1.[2] Officer Berry identified Appellant as the driver of the vehicle and observed that Appellant had bloodshot and watery eyes. *Id.* At the same time, Officer Berry detected a strong odor of alcohol emanating from the vehicle. *Id.* There was also a passenger in the vehicle who was in possession of a half-full, 12 ounce can of beer. *Id.* The passenger informed Officer Berry that the can of beer belonged to Appellant. *Id.* Officer Berry also noticed there was an empty 16 ounce can of beer located on the floor of the driver's side. *Id.* Officer Berry asked Appellant to perform a series of field coordination exercises. *Id.* Officer Berry additionally conducted a preliminary breath test, which yielded a positive

_____

[2] At trial, counsel for Appellant stipulated to the affidavit of probable cause in its entirety, and it was admitted into evidence as Commonwealth's Exhibit 1. N.T., 5/23/14, at 8.

result for the presence of alcohol. *Id.* at 2. Based on Appellant's performance on the field tests and the result of the preliminary breath test, Officer Berry arrested Appellant for DUI. *Id.* Appellant's blood was later tested for alcohol content, and it was determined that his blood alcohol concentration (BAC) was .162.[3]

On October 25, 2013, the Commonwealth charged Appellant with the aforementioned offenses. On November 25, 2013, Appellant filed a motion to suppress, asserting that Officer Berry lacked reasonable suspicion or probable cause to initiate a traffic stop. On February 11, 2014, the trial court held a hearing on Appellant's motion to suppress. Following the hearing, the trial court ordered the parties to file memoranda of law in support of their respective positions. Trial Court Order, 2/11/14. On May 6, 2014, the trial court filed an order and opinion denying Appellant's motion to suppress. Trial Court Order and Opinion, 5/6/14, at 1-4.

Appellant proceeded to a non-jury trial on May 23, 2014. At the conclusion of the trial, Appellant was found guilty of all charges. On June 24, 2014, the trial court sentenced Appellant to 72 hours' to six months' imprisonment plus a $1,000 fine for DUI - high rate of alcohol, a $25.00 fine for restriction on alcoholic beverage, and "no separate sentence" for DUI –

---

[3] The affidavit of probable cause indicates a BAC of .172. Affidavit of Probable Cause, 7/23/13, at 2. At trial, the Commonwealth conceded that the margin of error could render Appellant's BAC at .162. N.T., 5/23/14, at 18.

general impairment. Sentencing Order, 6/26/14. Appellant filed a timely notice of appeal on July 11, 2014.[4]

On appeal, Appellant raises the following issue for our review.

> Whether the [t]rial [c]ourt erred in failing to suppress evidence obtained as a result of an unlawful traffic stop[?]

Appellant's Brief at 4.

When reviewing a challenge to a trial court's denial of a suppression motion, we adhere to the following well-established standard of review.

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law.

*Commonwealth v. Gary*, 91 A.3d 102, 106 (Pa. 2014) (citation omitted).

_____

[4] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. Specifically, the trial court filed two opinions in response to Appellant's Rule 1925(b) statement. On August 26, 2014, the trial court filed a Rule 1925(a) opinion authored by the judge who presided over Appellant's motion to suppress hearing. Trial Court Opinion, 8/26/14, at 1-2. Therein, the trial court directed this Court's attention to the opinion filed on May 6, 2014, articulating the trial court's reasoning for its denial of Appellant's suppression motion. *Id.* On August 29, 2014, the trial court filed a Rule 1925(a) opinion authored by the judge who presided over Appellant's trial. Trial Court Opinion, 8/29/14, at 1-2. Therein, the trial court found that Officer Berry's authority to stop the vehicle had been previously decided as a matter of law and asserted all elements necessary to find Appellant guilty were established at trial. *Id.* at 2.

We begin by noting, "[i]t is undisputed that the stopping of an automobile and the detention of its occupants is a seizure subject to constitutional restraints." **Commonwealth v. Garibay**, --- A.3d ---, 2014 WL 6910871, *2 (Pa. Super. 2014) (*en banc*) (citation omitted). Therefore, Appellant's issue implicates the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, as both afford protection against unreasonable searches and seizures. U.S. Const., amend. IV; Pa. Const. art. I, § 8. "While warrantless seizures such as a vehicle stop are generally prohibited, they are permissible if they fall within one of a few well-delineated exceptions." **Commonwealth v. Brown**, 996 A.2d 473, 476 (Pa. 2010) (citation omitted). The Pennsylvania Motor Vehicle Code provides for one such exception, based on reasonable suspicion of a motor vehicle code violation.

### § 6308. Investigation by police officers

…

**(b) Authority of police officer.—**Whenever a police officer is engaged in a systemic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b). Accordingly, Section 6308 requires that an officer have reasonable suspicion to support a traffic stop in order to gather information necessary to enforce the Motor Vehicle Code provision. **Commonwealth v. Landis**, 89 A.3d 694, 702 (Pa. Super. 2014). "However, in [**Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*)] this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no 'investigatory purpose relevant to the suspected [Motor Vehicle Code] violation.'" **Id.** To illustrate, "a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense." **Id.** (citation omitted).

Because Officer Berry's basis for initiating the traffic the stop was his observation of the manner in which Appellant's brake lights functioned and not a violation that would require further investigation, the requisite suspicion for a constitutionally valid traffic stop in this case is probable cause. **See id**. Therefore, at the suppression hearing, Officer Berry was required to "articulate specific facts possessed by him, at the time of the questioned stop, *which would provide **probable cause** to believe that the vehicle or the driver was in violation of some provision of the Code*." **Feczko**, **supra** (citation omitted; emphasis in original).

Appellant argues, "[t]he only evidence to permit the officer to stop [] Appellant's vehicle was an after-the-fact justification suggesting an equipment violation ….[5] Appellant's Brief at 9. Appellant further contends, "[a]s there was no violation of the vehicle code, the stop/arrest was not valid." *Id.* at 10. The Commonwealth counters, "[b]ecause [Appellant] was in violation of the Motor Vehicle Code, the officer had justifiable grounds on which to stop [Appellant]'s vehicle." Commonwealth Brief at 7.

At the suppression hearing, Officer Berry testified as follows regarding his decision to initiate the traffic stop after observing Appellant's vehicle.

> [Commonwealth:]
>
> Q. When [Appellant's vehicle] made a stop at a stop sign, can you describe the back of the vehicle?
>
> [Officer Berry:]
>
> A. Yes. When the vehicle stopped, all three of the required brake lights turned on simultaneously, worked as they should. The vehicle then applied its right turn signal to go between the buildings of Napa Auto Store and the Dollar Store. When the vehicle started to excel, two of the three brake lights had turned off, and the driver's side brake light remained on.
>
> …

---

[5] To the extent Appellant argues Officer Berry's articulated reason for the traffic stop was a pretext to investigate a possible DUI, this claim is waived. *See* Appellant's Brief at 9. Appellant provides no citation to legal authority or discussion in support of the bald assertion that, "the real reason for the stop was the potential DUI[,]" that would afford him any relief. *Id*; *see also* Pa.R.A.P. 2119(b).

Q. After he pulled away and started turning towards the one-way street, … [w]hat lights were on and what lights were off?

A. When he applied the brake, all of them turned on. When he started to excel, the center brake light and the passenger's side brake light had turned off, and the driver's side brake light had remained on.

…

Q. … When you saw the fact that the … light remained on, what were you thinking at the that time?

A. I was thinking it was an equipment violation[,] and I had a reason to stop the vehicle.

N.T., 2/11/14, a 6, 8-9.

Instantly, Officer Berry articulated the reason for the traffic stop was that one of Appellant's brake lights remained on while the car accelerated, and he believed this to be an equipment violation. *Id.* Section 4303 delineates the requirements for lighting equipment on motor vehicles and provides, in relevant part, as follows.

### § 4303. General lighting requirements

...

**(b) Rear lighting.**—Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department. If a vehicle is equipped with a centrally mounted rear stop light, a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or

overlay meets all applicable State and Federal regulations.

75 Pa.C.S.A. § 4303(b). The Pennsylvania Department of Transportation Regulations provides further detail on motor vehicle lighting requirements.

### § 153.4. Requirements.

…

(e) *Special wiring requirements.* Special wiring requirements shall be as follows:

…

(4) The stop lamps on each vehicle shall be activated upon application of the service brakes.

67 Pa. Code § 153.4(e)(4). Section 175 includes additional lighting requirements.

### § 175.66 Lighting and electrical systems

…

(e) *Other required lamps*. A vehicle specified under this subchapter shall have at least one red stop lamp on each side of rear of vehicle, which shall be illuminated immediately upon application of the service brake.

67 Pa. Code § 175.66(e).

Appellant does not dispute that Officer Berry observed one of his three brake lights illuminated while the car was accelerating. **See generally** Appellant's Brief at 1-12. Rather, Appellant argues that Officer Berry's "testimony did not show a violation of this provision as both rear lamps illuminated upon application of the service brake." **Id.** at 10.

In **Commonwealth v. Muhammed**, 992 A.2d 897 (Pa. Super. 2010), a police officer effectuated a traffic stop after observing that a vehicle's center brake light did not illuminate when the appellant applied his brakes. **Muhammed**, **supra** at 903. The two fender brake lights, the officer stated, appeared to be in proper working condition. **Id.** This Court concluded that "[a]lthough the center brake light was not mandatory equipment on Appellant's vehicle, the vehicle was so equipped; thus, the light can be held to the same standards and requirements as the other brake lights." **Id.** Likewise, Appellant's vehicle was equipped with three brake lights, and therefore, all three brake lights are held to comply with Section 4303(b) and the relevant regulations. **See id.**

We acknowledge that in **Muhammed** the challenged violation involved a brake light that did not activate upon application of the brake whereas in the instant case, the challenged violation involves a brake light that did not extinguish upon Appellant's car accelerating. Appellant's argument rests, in large part, on the observation that his brake lights indeed "illuminated upon application of the service brake." Appellant's Brief at 10. However, "[t]he primary purpose of the Motor Vehicle Code and its amendments is to protect and promote public safety and property within the Commonwealth. Therefore, every provision of the Code should be interpreted in light of that intent." **Commonwealth v. DeFusco**, 549 A.2d 140, 142 (Pa. Super. 1988) (citations omitted). Undoubtedly, the regulations specifying the rear

- 10 -

lighting requirements on motor vehicles pursuant to Section 4303(b) require that brake lights must illuminate immediately upon application of the brake. 67 Pa. Code §§ 153.4(e)(4) and 175.66(e), respectively. It follows that the purpose of such requirement is to alert other motorists of a vehicle's slowing pace in order to prevent accidents. Appellant implicitly argues that brake lights that remain illuminated after a vehicle begins to accelerate, *i.e.* when the vehicle is not braking, does not violate the Motor Vehicle Code as long as the brake lights illuminate upon initial application of the brakes. **See** Appellant's Brief at 10. Such interpretation would be inconsistent with the intent of the Motor Vehicle Code to protect and promote public safety and property within the Commonwealth. **See DeFusco**, **supra**. A brake light that remains illuminated when the brake is not activated does not provide other motorists with an accurate indication of the vehicle's speed or change thereof.

Based on the foregoing discussion, we conclude the trial court did not err when it found Officer Berry was within his authority to initiate a traffic stop for a violation of the motor vehicle code.[6] **See Gary**, **supra**; **Feczko**,

---

[6] We note the trial court found Officer Berry was only required to possess reasonable suspicion in order to effectuate the traffic stop. Trial Court Opinion, 5/6/14, at 2-3. Although we conclude the appropriate level of suspicion is probable cause, this does not affect our disposition because we conclude Officer Berry possessed probable cause to initiate the traffic stop. As an appellate court, we may affirm the trial court on any legal basis supported by the record. **Commonwealth v. Charleston**, 16 A.3d 505,
*(Footnote Continued Next Page)*

***supra***. Accordingly, the trial court's June 24, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2015

*(Footnote Continued)* ────────

529 n.6 (Pa. Super. 2011) (citation omitted), *appeal denied*, 30 A.3d 486 (Pa. 2011).