579 A.2d 1386

**#1 COCHRAN, INC. and Cochran Pontiac, Inc., Petitioners,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted July 13, 1990.

Decided Sept. 21, 1990.

---

William R. Lauer, William R. Lauer & Associates, for petitioners.

Lisa J. Fanelli, Asst. Counsel, with her, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Ronald P. Hartwick, for himself, intervening respondent.

Before DOYLE and BYER, JJ., and BARRY, Senior Judge.

BYER, Judge.

# 1 Cochran, Inc. and Cochran Pontiac, Inc. (collectively Cochran) appeal from an order of the Unemployment Compensation Board of Review (board) which reversed a referee's denial of benefits to Ronald P. Hartwick (claimant) pursuant to section 402(b) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).[1]  We affirm.

When an employer has instituted an unreasonable, unilateral change in the employment agreement, we have recognized this as cause of a necessitous and compelling nature enabling the employee to leave employment voluntarily

---

1. Section 402(b) of the act, 43 P.S. § 802(b) states in pertinent part that:

   An employe shall be ineligible for compensation for any week—
   . . . .

without becoming ineligible for unemployment compensation benefits in accordance with section 402(b) of the act, 43 P.S. § 802(b). *National Freight, Inc. v. Unemployment Compensation Board of Review,* 34 Pa. Commonwealth Ct. 161, 382 A.2d 1288 (1978). As determined by the board, this is the situation presented here.

Claimant worked at Cochran for seven years as an automobile salesperson. Effective September 1, 1989, Cochran altered its former compensation arrangement to all salespersons in three major areas.

(1) Prior to September 1, 1989, salespersons were paid a 35% commission of the dealer's gross profit on sales of less than twenty cars per month, and salespersons selling twenty or more cars per month received a 40% commission on all cars sold for that month. Under the new plan, sales of one to eleven units entitled the salesperson to a 30% commission; for twelve to fifteen units this increased to 35% of all units sold; while sixteen to nineteen units resulted in a 40% commission. From this point, as each additional five units were sold, there was a corresponding 5% increase in the commission paid to the employee.

(2) Prior to September 1, 1989, Cochran provided its employees without charge a demonstrator car, with no requirement to sell any specified number of cars monthly. Under the new plan, Cochran established a quota of sixteen units per month; failure to meet this quota resulted in a $300 charge and deduction from gross pay for the demonstrator car.

(3) Cochran added a 1% advertising charge, which reduced to that extent the dealer's gross profit on which employee sales commissions were based.

Dissatisfied with the new compensation program, claimant expressed his concerns to the general sales manager on August 24, 1989. After considering the matter at home for several days on the advice of the general manager, claimant

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature

.    .    .    .    .

returned to Cochran on September 5, 1989 for a one month trial period under the new plan. During the month, claimant sold eleven cars and, as a result, had no earnings from commissions over the $300 monthly deduction for the demonstrator car. However, he was still eligible to participate in the various income-producing bonus programs that Cochran provided and was also entitled to receive his draw of $650.

On October 4, 1989, claimant terminated his employment and filed for unemployment compensation benefits with the Office of Employment Security (OES). OES denied benefits, and claimant appealed. A hearing was held before a referee, who affirmed OES' denial of benefits on the basis that:

15. No other salesperson quit his job during September or until October 4, 1989, because of the change in the compensation plan even though not all of the sales persons met their sales quotas for the month of September, and some of them had to pay $300 for the use of the company's demonstrator.

16. Continuing work was available for the claimant, but he did not avail himself of same because of his dissatisfaction with the newly implemented compensation plan and because salespersons had to pay for the use of the company demonstrator if the employee did not sell 16 cars during the month.

(Referee Findings of Fact 15–16).

Based upon these findings, the referee concluded that claimant failed to give the plan a fair chance before leaving his job and, therefore, did not meet his burden of demonstrating cause of a necessitous and compelling nature.

On appeal by claimant, the board reversed the referee's determination. The board found that there had been a drastic reduction in the claimant's earnings, and thus "the change in the employer's compensation plan [was] an unreasonable, unilateral change in the claimant's condition of hire and the claimant [had] shown cause of a necessitous and compelling nature for quitting his job." (board opinion at 3)

Cochran now appeals to this court, questioning whether the board was entitled to disregard the referee's findings of fact 13, 15, and 16, whether there was substantial evidence based on the record as a whole to support the board's conclusion, and whether the claimant successfully demonstrated cause of a necessitous and compelling nature for this voluntary termination of employment.[2]

Cochran first argues that the board improperly ignored findings of fact when it reversed the referee's decision.[3] In *Treon v. Unemployment Compensation Board of Review,* 499 Pa. 455, 461, 453 A.2d 960, 962 (1982), the court held that the board may not "disregard findings made by the referee which are based upon consistent and uncontradicted testimony without stating its reason for doing so."

■ In *Treon,* as here, the board failed to adopt specific findings made by the referee and offered no explanation for the omission. While acknowledging the board's right to disbelieve claimant's uncontradicted testimony or view it differently, the court in *Treon* did not acknowledge any

**2.** Our scope of review is limited to a determination of whether there is substantial evidence to support the Board's findings, whether an error of law was committed or whether any constitutional rights were violated. 2 Pa.C.S. § 704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

**3.** Cochran questions the board's omission of referee findings 13, 15 and 16. We concentrate on findings 15 and 16 even though the board also failed to adopt referee finding 13, which stated:

13. Claimant was entitled to participate in and receive income from various bonus programs and promotions during the month of September and was also entitled to receive his draw of $650.00.

However, the board did not disregard finding 13. Instead, it is included in board findings 2 and 3, as follows:

2. Auto salespersons worked for Cochran Pontiac on a draw versus commission basis, and the draw at the time of claimant's separation was $650.00 per month.

3. In addition to paying salespersons commissions regarding their sales of automobiles for the employer, the employer has various and numerous bonus programs and promotions where salespersons earned additional income.

We have found no error where the referee's findings of fact are considered by the board on appeal, although adopted with somewhat different wording. *See, e.g., Uniontown Newspapers, Inc. v. Unemployment Compensation Board of Review,* 126 Pa. Commonwealth Ct. 102, 558 A.2d 627 (1989).

right of the board to "arbitrarily and capriciously disregard the findings of the referee" based on uncontradicted testimony. *Id.*, 499 Pa. at 461, 453 A.2d at 962. Rather, when the board elects to omit such findings, it must state its reasons for doing so. Failing this, the referee's findings of fact will be reinstated. *Treon.*

■ Claimant contends that findings 15 and 16 should not be reinstated because the referee made invalid inferences based upon them. However, while it is within the board's province to draw its own inferences from uncontradicted testimony, *Rodrigques v. Unemployment Compensation Board of Review*, 58 Pa. Commonwealth Ct. 362, 427 A.2d 1255 (1981), the board is not free simply to ignore the existence of the referee's findings of fact based on undisputed testimony. Because findings 15 and 16 are uncontradicted and the board offers no explanation for deleting them, we reinstate those findings. Having reinstated referee's findings 15 and 16, we must now consider the remaining issues based on all the findings, including those now reinstated.[4]

■ Cochran contends that the board lacked substantial evidence to support its conclusion that claimant suffered a "drastic reduction" in his earnings. (board opinion at 3) We disagree.

In *Kenneth v. Unemployment Compensation Board of Review*, 66 Pa. Commonwealth Ct. 377, 444 A.2d 824 (1982), the claimant testified before the referee that accepting her employer's new payment plan either would require her to work longer hours for the same pay she had been receiving or, if she worked for her usual number of hours, would result in substantially reduced compensation. We determined that this was substantial evidence to support the board's decision granting unemployment compensation in that case. Similarly, the claimant in this case worked his

---

**4.** In both *Treon* and *Uniontown Newspapers*, the board ignored at least one of the referee's findings which were subsequently reinstated by the court. Yet in both cases, the court concluded that the facts, even as reinstated, justified the claimant's position.

customary hours during the trial month. Yet his commission for that period was zero. This was a situation which never had occurred during his prior seven years at Cochran, indicating that his future earnings would be reduced dramatically.

A review of the claimant's testimony before the referee also reveals that the claimant based his prediction of lowered income on his history of sales for Cochran. In *Grenier v. Unemployment Compensation Board of Review*, 95 Pa. Commonwealth Ct. 527, 505 A.2d 1363 (1986), we observed that the claimant would not suffer a drastic pay reduction, based upon our examination of the claimant's history of past sales earnings with that employer. In *Grenier*, the claimant was demoted from manager to the sales position he had held previously. This change meant that his salary would be reduced, but that he would be able to earn commissions again. We found him ineligible to receive unemployment compensation because his sales history indicated that if he performed as he had in the past, his total earnings would not be reduced.

By contrast, the claimant in this case testified that within the eighteen months preceding his termination, he had successfully reached the monthly sixteen-unit goal on only two occasions. This meant that typically he would face a $300.00 deduction for his demonstration car. Moreover, in his past seven years with Cochran, he had never sold enough cars to meet the new yearly quota. (29a).

In an unemployment compensation case, "[t]he appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the board's conclusion exists." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 355, 378 A.2d 829, 831 (1977). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Gochenauer v. Unemployment Compensation Board of Review*, 59 Pa.

Commonwealth Ct. 354, 429 A.2d 1246 (1981); *Owen v. Unemployment Compensation Board of Review*, 26 Pa. Commonwealth Ct. 278, 363 A.2d 852 (1976). Even if the referee interpreted claimant's testimony regarding his past sales performance to reach a contrary conclusion, the board's decision here is supported by substantial evidence.

■ Finally, Cochran asserts that as a matter of law, claimant failed to demonstrate necessitous and compelling circumstances for terminating his employment. "A claimant whose unemployment is due to voluntary termination bears the burden of proving that such termination was with cause of a necessitous and compelling nature; that is, circumstances which place a real and substantial pressure on the employee to terminate employment, and which would cause a reasonable person under like circumstances to do the same." *Breslow v. Unemployment Compensation Board of Review*, 102 Pa. Commonwealth Ct. 187, 190, 517 A.2d 590, 592–93 (1986) (*citing Flatley v. Unemployment Compensation Board of Review*, 93 Pa. Commonwealth Ct. 78, 500 A.2d 515 (1985)). We have held that a substantial reduction in pay can constitute a necessitous and compelling cause for a claimant to voluntarily terminate employment. *Naylon v. Unemployment Compensation Board of Review*, 83 Pa. Commonwealth Ct. 502, 477 A.2d 912 (1984); *Ship Inn, Inc. v. Unemployment Compensation Board of Review*, 50 Pa. Commonwealth Ct. 292, 412 A.2d 913 (1980). There is no talismanic percentage figure which separates a substantial reduction from one that is not. Each case must be measured by its own circumstances. *Ship Inn.*

■ With our reinstatement of findings 15 and 16, this burden becomes more difficult. Claimant was not an isolated target of Cochran's new compensation plan, and yet, as of October 14, 1989, he was the only employee to quit his job. Under the new compensation plan, however, the take home pay of individual salespersons would vary. While Cochran's new payment plan envisioned even greater reward for those salespersons who outperformed the other employees, it had an adverse effect on those performing at

lower levels. Claimant, relying on knowledge of his own past performance, judged the plan's effect on his earnings. When his performance during the trial period proved typical of past months and his income was reduced, he felt compelled to leave. The board's consideration of these circumstances led it to conclude that claimant's voluntary termination of employment was based upon cause of a necessitous and compelling nature based upon this court's opinions in *Ship Inn* and *Naylon.* Giving proper deference to the board's construction of the act,[5] we see no reason to reverse, because the board's decision is not clearly erroneous.

We affirm the order of the Unemployment Compensation Board of Review.

## ORDER

The order of the Unemployment Compensation Board of Review is affirmed.

---

**5.** An administrative agency's expert interpretation of a statute for which it has enforcement responsibility is entitled to great deference and will not be reversed unless clearly erroneous. *Lafayette College v. Commonwealth, Department of Labor and Industry,* 118 Pa. Commonwealth Ct. 11, 546 A.2d 126 (1988); *Spicer v. Commonwealth, Department of Public Welfare,* 58 Pa. Commonwealth Ct. 558, 428 A.2d 1008 (1981). When an administrative agency rests its conclusion upon its expertise, courts generally respect its special competence. *Hogan v. Unemployment Compensation Board of Review,* 169 Pa. Superior Ct. 554, 558–59 n. 2, 83 A.2d 386, 389 n. 2 (1951). Thus, we may not substitute our discretion for the administrative discretion of the board.