JACK A. DANTON, D.O., P.C., et al.

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

No. 91–0013.

United States District Court,
E.D. Pennsylvania.

June 28, 1991.

David S. Dessen, Philadelphia, Pa., for plaintiffs.

Earl T. Britt, Mark P. Harbison, Wayne A. Schaible, Duane, Morris & Heckscher, Philadelphia, Pa., for State Farm Mut. Auto. Ins. Co.

Melvin R. Shuster, Margolis, Edelstein, Scherlis, Sarowitz & Kramer, Philadelphia, Pa., for Worldwide Auditing Services, Inc.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the Court are the Supplemental Memoranda filed pursuant to this Court's Order of April 4, 1991 and the Defendant's Motion to Dismiss the Amended Complaint. The original complaint filed comprised counts relating to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), bad faith and punitive damages under the MVFRL, and tortious interference with contract. While waiting for the supplemental memoranda regarding the exclusivity of the peer review organization (PRO) procedure for reviewing medical bills submitted to insurance companies through automobile insurance policies under the Act 6 Amendments (the "Amendments") to the MVFRL, the plaintiffs filed an Amended Complaint, which contained the same counts as the original complaint, but added counts under the Pennsylvania

Unfair Trade Practices and Consumer Protection Law ("CPL"). At this point, I have dismissed the claims regarding punitive and bad faith damages in the original Complaint (and therefore the same arguments apply to the relevant Counts in the Amended Complaint) in Counts I, III, V, VII, IX, and XI. I have also dismissed the counts regarding tortious interference with contract.[1] I have also dismissed any claims in Counts I, III, V, VII, IX, and XII regarding claims filed with State Farm before April 15, 1990 that do not arise from valid executions of assignments of the right to receive payment under the insurance policy to the plaintiffs. The only issues remaining, then, are those addressed in the Supplemental Memoranda and those regarding the new counts under the CPL. I will address the arguments in the supplemental memoranda and the briefs regarding the CPL in this Memorandum.

## I. Act 6 Amendments to the MVFRL

From the statute and administrative code regarding this issue,[2] it seems that the procedures developed in the Act 6 Amendments to handle first-party claims against an insurance company are exclusive. Therefore, any claims filed after April 15, 1990 must have been processed by the system set out in the Act 6 Amendments before a suit may be filed in district court.

As stated in my Memorandum of April 4, 1991, the procedures set up under the Amendments, 75 Pa.C.S.A. § 1797, are as follows: providers who give health care for injuries arising under MVFRL-covered policies must bill the insurance companies directly. If coverage under the policy is not

---

1. The plaintiffs filed a motion for reconsideration regarding the decision to dismiss the tortious interference counts, which I denied by Order dated May 7, 1991. The plaintiffs maintain that the version of the Restatement of Torts (Second) on which I based my original decision dated April 4, 1991 is not the one adopted by the Pennsylvania courts. The confusion arises from the fact that § 766 of the Restatement of Torts (Second) has three versions, which over the years have had many drafts. If the plaintiffs were to examine the *text* of the various sections adopted by the Pennsylvania courts, they would see that no matter which title

(§ 766, § 766A, or § 766B) the Pennsylvania courts used, the only text that they ever adopted was the one discussed in my opinion dated April 4, 1991. Since the plaintiffs have agreed in their motion for reconsideration that they do not state a claim under § 766 of the Restatement of Torts (Second), I do not need to address substantively the issue of its application to the facts present here.

2. This issue has not yet been presented to the Pennsylvania Supreme Court.

exhausted, the insured may not be billed directly for medical treatment. In the scheme set up in the Amendments, the providers are limited in their charges for all procedures. The provider may not bill the insured for the difference between its normal charges and the amount for which the insurance company reimbursed the provider.

The insurance companies are required to contract with Peer Review Organizations (PROs) to handle billing disputes. If the insurance company disputes the amount of the bill, it must send it to its PRO within 90 days of receipt for a determination of whether the treatment and billing amount was medically necessary and reasonable. If the insurer sends the bill to the PRO within 30 days, it does not have to pay the bill until the PRO decision. The party against whom the PRO decides has the right to ask the PRO for reconsideration. The Pennsylvania Department of Insurance in its guidelines has interpreted the procedures to mean that once the PRO has decided whether the treatment was reasonable or necessary, the insurance company, provider or insured may appeal the decision to a court. *See* 31 Pa.Code § 68.2(c).

The Amendments also provide that if the insurance company does not pay in full to the provider *without* consulting with a PRO, the provider or the insured may bring a civil action against the insurance company. If it is determined that the insurance company should have paid the bill, the insurer must pay the amount plus 12% interest and attorneys' fees and costs. If it is determined that the insurer acted "wantonly" in its denial, the insurer may have to pay treble damages to the plaintiff. Therefore, the Amendments have allowed the provider two new causes of action: 1) if the insurance company denies payment in full without consulting a PRO and getting its approval first; and 2) if the provider wishes to appeal the PRO determination.[3]

The plaintiffs argue that if this procedure is held to be exclusive, then the legislature has taken away a constitutional right *by implication* from "all citizens of Pennsylvania," an action the Legislature is not permitted to take. The plaintiffs' theory is based on the constitutional right to access to the courts.

It is axiomatic, however, that a party may only maintain a lawsuit if that party has a cause of action. Previously, the Pennsylvania legislature and courts provided some limited protection to insureds who had had bad faith denials of coverage by their insurance companies. Now, the insured or provider still has the right to sue if the insurance company refuses to pay the provider's bill in full without consulting a PRO. Furthermore, the insured still has the right to appeal the decision of the PRO to court if it is against the insured. This route to the courts may be more indirect than previously, but ultimately the insured or provider has the right to challenge the insurance company decisions in court. Finally, if the insurance company takes an action unrelated to the payment of first party benefits of medical bills under automobile insurance, the insured has a right to sue the insurance company. Therefore, this statute has not taken away any right of the insured to sue for actions adverse to the insured by the insurance company.

The plaintiffs also argue that because 75 Pa.C.S.A. § 1716 and 75 Pa.C.S.A. § 1798 have not been repealed, the procedures in section 1797 cannot have been meant to be exclusive. This argument, however, ignores the plain wording of the statute and the rules of statutory construction.

Section 1797 is entitled "Customary charges for treatment," and is subdivided into basically two parts: a) "General rule" and b) "Peer review plan for challenges to reasonableness and necessity of treat-

---

**3.** As discussed in my earlier Memorandum, before the Amendments, a provider had no *right* to sue an insurer directly for non-payment of

first party benefits. If the insured assigned its right to receive payment under the policy to the

ment."[4]  This section, then, describes for the providers and insurance companies the amounts allowed to be charged for medical care and then explains how to dispute these charges.

Section 1716, "Payment of Benefits," states

Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

Section 1798, "Attorney Fees and Costs," describes how to calculate attorney's fees provided under the statute. It also provides attorney's fees if the insurance company's action has been found to be unreasonable.

Neither of these sections contradicts or adds any further rights to what is provided in the new version of section 1797. Under section 1797, payment is still overdue if not made in 30 days. Now, however, the insurance company has 90 days in which to dispute the bill with the PRO. Section 1797 does provide an exception to the general rule in section 1716 of overdue pay-

ments by stating that if an appeal to the PRO is made within 30 days of receipt of the bill, the insurance company does not have to pay the provider until the PRO decision.[5]  The interest and attorney's fees in section 1716 are included in the section 1797 set-up. Finally, section 1798 only explains what is meant by an attorney fee, and repeats what is clearly stated in section 1797: if an insurance company behaves unreasonably in a denial of benefits, it must pay attorney's fees.[6]  Therefore, the fact that sections 1716 and 1798 remain in existence does not defeat the argument that section 1797 and the relevant administrative code provisions explaining it are the exclusive *system* for the insurance company to challenge the reasonableness and necessity of treatment, and in turn, describe the system for penalizing the insurance company if it does not follow the system.

This review of the new system developed by the Amendments demonstrates that in this context the providers only have a cause of action in two cases: 1) if the insurance company refused to pay in full the provider's bill and did not seek review with a PRO; or 2) if a PRO decided adversely to the provider and the provider wishes to appeal the decision to a court. Therefore, in order for a provider to maintain an action against an insurance company for non-payment of first party benefits under an automobile insurance policy, the provider must plead facts to support at least one of these causes of action. The plaintiffs have certainly plead that State Farm refused to pay in full the bills

provider, then the provider could sue under the MVFRL.

4.  Prior to this amendment, the section was only one paragraph stating that the provider cannot charge more than its customary charges for treatment when treating someone covered by automobile insurance.

5.  According to Pennsylvania rules of statutory construction, a particular statute controls over a general statute, *see* 1 Pa.C.S.A. § 1933, and the later statute controls over the preceding statute if they are irreconcilable. *See* 1 Pa.C.S.A. § 1936. The revision of § 1797 is more recent than the enactment of § 1716. The non-pay-

ment exception in § 1797 for bills challenged before the PRO within 30 days is contradictory to the general rule in § 1716 that non-payment after 30 days is prohibited. Therefore, the rule in § 1797 must be interpreted as an exception to the general rule in § 1716.

Examining the statutes from a purely logical standpoint, if the insurance company exercises its right under § 1797 not to pay the provider by challenging the bill with a PRO within 30 days, and the insured is still allowed to bring an action against the insurance company, the procedure in § 1797 would be meaningless.

6.  It should be noted that section 1798 also applies to the Catastrophic Loss Trust Fund.

presented to it. However, the plaintiffs have not plead facts sufficient to state a cause of action under either of the above scenarios.

First, the plaintiffs did not state that State Farm took this action without consulting a PRO; the only way that a provider may sue State Farm directly and originally in a court. Second, the plaintiffs did not claim that a PRO determined that the plaintiffs' bills were too high and the plaintiffs decided to appeal this decision. *See* 31 Pa.Code § 68.1(a). As a result, Counts I, IV, VII, X, XIII, and XVI in the Amended Complaint, as pertaining to bills for services provided after April 15, 1990, must be dismissed.

## II. CPL Counts

■ As stated above, the plaintiffs have added counts to the original complaint to claim damages under the CPL. These counts must be dismissed as well, however, because the plaintiffs do not have standing to sue under the CPL.

The CPL provides a right of action to a person who:

purchases or leases goods or services for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of unfair or deceptive acts or practices.

73 P.S. 201–9.2(a).

Putting aside the question of whether the purchase of an insurance policy is considered the purchase of a good or service, clearly the providers of health care for those who purchased an insurance policy are not those people who are protected under the CPL. The plaintiffs contend that because they are the assignees of the right to receive payment under the insurance policy, they stand in the shoes of the insureds. This argument cannot succeed, because the plaintiffs are only the assignees of a limited benefit under the policy. The CPL contemplates that the only parties entitled to a cause of action under this statute are those who purchased the policy for personal, family or household use, not those who may receive a single benefit of the good or service. Although the providers are indirectly injured by the alleged conduct of State Farm, the CPL provides protection for *consumers* who were adversely affected by an unfair method of competition as defined in 73 P.S. § 201–2(4)(i)–(vii). The providers as such, then, cannot maintain an action against State Farm under the CPL. Therefore, I will dismiss Counts III, VI, IX, XII, XV, and XVIII of the Amended Complaint.

## III. Conclusion

In summary, I am dismissing all claims in Counts I, IV, VII, X, XIII, and XVI in the Amended Complaint for punitive and bad faith damages (the ad damnum clauses). I will allow to go forward claims in Counts I, IV, VII, X, XIII, and XVI under the MVFRL for claims filed with State Farm before April 15, 1990 that arise from valid executions of assignments of the right to receive payment under the State Farm policies only. The causes of action under the MVFRL in Counts I, IV, VII, X, XIII, and XVI for claims filed with State Farm after April 15, 1990 are dismissed for failure to plead the necessary prerequisites to stating a claim under the Act 6 Amendments. The tortious interference with contract claims in Counts II, V, VIII, XI, XIV, and XVII are dismissed. Finally, Counts III, VI, IX, XII, XV, and XVIII that make claims under the CPL are dismissed as well.