618 A.2d 1032

Patricia TERMINATO, Appellant

v.

**PENNSYLVANIA NATIONAL INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued April 8, 1992.

Filed Jan. 11, 1993.

■■■■■■■■■■■■■■■■
■■■■■■■■

■■■■■■■■■■■■■■■■■■

Michael T. Collis, Pittsburgh, for appellant.

Colin E. Fitch, Washington, for appellee.

Before CAVANAUGH, DEL SOLE and BROSKY, JJ.

CAVANAUGH, Judge.

Peer review is a procedure to evaluate disputed automobile insurance medical claims established by recent amendments to the Motor Vehicle Financial Responsibility Law.[1] It enables insurers to submit such claims to an entity known as a Peer Review Organization, which determines whether the claims conform to professional standards of performance and are medically necessary. The predominant issue before us is whether a party, once the Peer Review process is invoked, must exhaust that process before proceeding to court. The lower court, relying, *inter alia*, on Insurance Department regulations to inform its decision, held that a party in the Peer Review process must exhaust the remedies in that process before proceeding to court. We affirm.

On October 21, 1989, the appellant, Patricia Terminato, was involved in an automobile accident in Washington County. Terminato claimed that as a result of the accident she suffered injury to her head, neck and back. She submitted to the appellee, Pennsylvania National Insurance Company, various medical bills purporting to be for medical services which were necessary because of the accident. To date, Terminato submitted $4,282.10 in medical bills to the appellee.

Initially, the appellee paid for treatment rendered by A.R. Bond, D.C., as well as other health care providers. However, the appellee refused to pay certain of the medical bills after invoking the Peer Review process by submitting appellant's

---

1. The Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. C.S.A. § 1701 *et seq.*, was amended by Act of February 7, 1990, P.L. 11 (Act 6). This amendment included the addition of the Peer Review Procedure, now appearing in 75 Pa.C.S.A. § 1797.

medical expenses to a Peer Review Organization ("PRO") for an initial determination. The PRO determined that certain of Terminato's medical expenses were not medically necessary for treatment of her injury. It felt that certain of these medical expenses were diagnostic in nature and done at the request of the appellant's lawyer in anticipation of the initiation of litigation. The appellee denied certain claims totalling $1,292.10 after receiving the report by the Peer Review organization.

The appellant subsequently initiated this action in the Court of Common Pleas of Washington County on April 10, 1991 without appealing the adverse determination within the Peer Review process. On July 5, 1991, the appellee answered the appellant's complaint. The appellee subsequently made a motion to dismiss the appellant's complaint, which was argued before the motions judge on July 11, 1991. On July 23, 1991, the court dismissed the appellant's complaint.

The tenor of the lower court's opinion is that the appellant's suit was not properly before it because the statute requires the appellant to exhaust the Peer Review process before proceeding to court. The lower court noted that if any party is dissatisfied with the initial determination by a PRO, whether it be an insurer, a medical provider or an insured, 75 Pa.C.S.A. § 1797(b) seems to require that a request for reconsideration must be made to a PRO. Such a request for reconsideration was not made by the insured, which attempted to pursue her relief in court. The Court also based its ruling on Insurance Department regulations interpreting the Peer Review section of the MVFRL, which state that "upon final determination by the PRO, an insurer, provider or insured may appeal the decision in court." The lower court noted the well-settled principle of administrative law that precludes a party from obtaining judicial review without first exhausting administrative remedies.[2]

Appellant presents five issues for our review:

2. Contradicting the thrust of its holding, the court also implied that there could be no judicial review of a PRO determination. The court felt that a bar to judicial review may be indicated by 75 Pa.C.S.A.

1. Whether peer review organizations are administrative agencies.

2. Whether § 1797(b) is ambiguous with respect to restricting judicial review.

3. Whether the appellant was denied an opportunity to respond to appellee's Motion for Leave to Amend or in the Alternative Motion to Dismiss.

4. Whether § 1797(b) of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1797(b), restricts judicial review of a determination of a peer review organization.

5. Whether the peer review procedure set forth in § 1797(b) deprives insureds and medical service providers of due process of law when medical bill payments are denied without judicial review.

The appellant's first two arguments will be addressed at the same time, as they similarly challenge the ruling that the insured must exhaust the Peer Review process.

■ The appellant claims that she is not required to exhaust the Peer Review process before proceeding in a court of law. She calls to the court's attention that § 1797(b), the section of the Act dealing with PRO reconsideration, states as follows in pertinent part:

(2) **PRO reconsideration.**—An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination.

\*　　\*　　\*　　\*　　\*　　\*

She claims that the legislature's use of the word "may" is permissive, and thus parties dissatisfied with a PRO determination can go directly to a court of law without seeking reconsideration. The appellant also asserts that the lower

§ 1797(b)(4), which states that a medical provider or an insured may challenge in court "an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which *the insurer has not challenged before a PRO.*" (emphasis added) The court felt this language limited the jurisdiction of the judiciary. According to the court, the words indicated that a medical provider or insured could not challenge in court medical claims which were not challenged first by the insurer before a PRO.

court erroneously considered a PRO an administrative agency, and thus mistakenly applied the well-settled principal that a party must exhaust its administrative remedies before pursuing its claim in a court of law. The appellant rightly notes that in *Pennsylvania Chiropractic Federation v. Foster*, 136 Pa.Cmwlth. 465, 478, 583 A.2d 844, 850 (1990), the Commonwealth Court specifically concluded that "[a] PRO is neither a Court of record nor an administrative agency."

In order to properly analyze the appellant's interpretation, we set forth at length the section which establishes the Peer Review process. The Peer Review process appears in 75 Pa.C.S.A. § 1797(b), which states as follows:

(b) **Peer review plan for challenges to reasonableness and necessity of treatment—**

(1) **Peer review plan.**—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to a PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment or services.

(2) **PRO reconsideration**—An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination. Such a request for reconsideration must be made within 30 days of the PRO's initial determination. If reconsideration is requested for the services of a physician or other licensed health care professional, then the reviewing individual must be, or the reviewing panel must include, an individual in the same specialty as the individual subject to review.

(3) **Pending determinations by PRO**—If the insurer challenges within 30 days of receipt of a bill for medical treatment or rehabilitative services, the insurer need not pay the provider subject to the challenge until a determina-

tion has been made by the PRO. The insured may not be billed for any treatment, accommodations, products or services during the peer review process.

(4) **Appeal to court**—A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

(5) **PRO determination in favor of provider or insured**—If a PRO determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12% per year on any amount withheld by the insurer pending PRO review.

(6) **Court determination in favor of provider or insured**—If, pursuant to paragraph (4), a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

(7) **Determination in favor of insurer**—If it is determined by a PRO or court that a provider has provided unnecessary medical treatment or rehabilitative services or merchandise or that future provision of such treatment, services or merchandise will be unnecessary, or both, the provider may not collect payment for the medically unnecessary treatment, services or merchandise. If the provider has collected such payment, it must return the amount paid plus interest at 12% per year within 30 days. In no case does the failure of the provider to return the payment, obligate the insured to assume responsibility for payment for the treatment, services or merchandise.

We find the appellant's argument unpersuasive for several reasons. The appellant, first of all, is misguided if it believes that the word "may" is used to indicate that a party has a

choice of either requesting reconsideration or appealing directly to a court of law. To the contrary, the use of the word "may" indicates a party has a choice between requesting reconsideration of the initial determination or accepting the initial determination as binding. "It is well settled that where the legislature provides a [statutory] remedy without preserving the parallel right to resort directly to the courts, that remedy is exclusive and must be strictly pursued." *Concerned Taxpay. v. Beaver Cty. Bd. of Assess.*, 75 Pa.Cmwlth. 443, 446, 462 A.2d 347, 349 (1983); *accord Lashe v. Northern York County School District*, 52 Pa.Cmwlth. 541, 546, 417 A.2d 260, 263 (1980). In such circumstances, we have interpreted words such as "may appeal" to indicate an aggrieved party must exhaust the statutorily defined remedy before proceeding to court. *Concerned Taxpay., supra*, 75 Pa.Cmwlth. at 443, 462 A.2d at 347 (words "may appeal" mean that taxpayer must pursue appeal before Taxpayer Board of Assessment). Accordingly, the statute does not indicate that a party in the Peer Review process can resort directly to the courts, but must either appeal within the Peer Review process or accept the PRO's initial determination as binding.[3]

**3.** We note that a recently decided case, although not directly addressing this issue, comports with our analysis.

In *Harcourt v. General Accident Ins. Co.*, 419 Pa.Super. 155, 161–63, 615 A.2d 71, 75 (No. 00752 Harrisburg 1991; filed October 5, 1992), our Court addressed as part of its disposition whether a Court of Common Pleas would be deprived of subject matter jurisdiction where a party who suffered an adverse PRO initial determination appealed to a court when a PRO declined to make a reconsideration determination. Apparently, the PRO refused to act on a medical provider's request for reconsideration because the medical provider refused to pay in advance a fee for the PRO to make reconsideration. The PRO argued that a court of law would not have subject matter jurisdiction until after a reconsideration determination was made.

We rejected this argument. In the course of our discussion, pertinent to the present case, we recognized that the law indicated that where a statutory remedy is clear and adequate, that remedy is exclusive. We implied that if the medical provider could gain recourse through the Peer Review process, we would not have jurisdiction. However, we found that the PRO's conduct prevented the medical provider from attaining reconsideration, which in turn denied his access to a court of law. Under this circumstance, we held that the medical provider had no adequate remedy but to file a declaratory action in the Court of Common Pleas for relief.

■ It is true that the doctrine of exhaustion of administrative remedies does not directly apply to appellant's claim. Any such implication in the court's decision would be in error. An Administrative Agency is a governmental body. See 2 Pa.C.S.A. § 101. A PRO, in contrast, is a business run by private citizens with whom insurance companies may contract to determine if certain medical claims conform to the professional standards of care "medically necessary." *See Pennsylvania Chiropractic Federation v. Foster,* 136 Pa.Cmwlth. 465, 476, 583 A.2d 844, 850 (1990) (noting that a PRO is neither a court of record or an administrative agency). While surely the doctrine of exhaustion of administrative remedies is not directly applicable to appellant's claim, we note the function that the Peer Review system serves is quasi-administrative in nature. The legislature could well have delegated the task of reviewing these claims to an administrative agency, but chose instead to attempt to resolve these disputes in the context of our private enterprise system.

■ Our interpretation of the statute is confirmed by a regulation (effective at the initiation of this lawsuit) promulgated by the Insurance Commissioner, which interprets § 1797 to allow for judicial review only after reconsideration by a PRO has been made. This regulation, 31 Pa.Code 68.2(c), provides as follows:[4]

> (c) [t]he Insurance Department interprets Act 6 to permit upon *final determination by the PRO,* an insurer, provider or insured may appeal the decision in court.

Thus, we find our analysis implicitly confirmed by *Harcourt, supra.* We note that there is no allegation in the present case of a PRO impeding the insured's ability to seek reconsideration. Rather, the appellant had a wholly and clearly adequate statutory remedy which she chose to ignore.

4. We note that subsequent to the initiation of the lawsuit, the Insurance Commissioner has revised the regulations pertaining to Peer Review. The revised regulations similarly require a claim to advance through the reconsideration stage of the Peer Review process before an appeal is taken to a court of law. For instance, 31 Pa.Code 69.52(m) (effective 1991) reads as follows:
> (m) Upon determination of a reconsideration by a PRO, an insurer, provider or insured may appeal the determination to the courts.

(emphasis added).

The above regulation explicitly denotes that the predicate for a party to proceed to a court of law is that the underlying claim must have undergone reconsideration in the Peer Review process. The construction of a statute by an administrative agency is entitled to great weight and only may be disregarded if clearly erroneous. *Insurance Co. of North America v. W.C.A.B.*, 137 Pa.Cmwlth. 393, 397–98, 586 A.2d 500, 502 (1991); *No. 1 Cochran v. Unemp. Comp. Bd. of Rev.*, 135 Pa.Cmwlth. 252, 579 A.2d 1386, 1391, *app. den.* 527, Pa. 653, 593 A.2d 424 (1990). As indicated *supra*, the interpretation afforded § 1797 by the Insurance Commissioner is, rather than clearly erroneous, in harmony with the current state of the law. Moreover, as indicated *infra*, such an interpretation facilitates the internal design of the law.

A contrary interpretation would undoubtedly frustrate the internal design of § 1797(b). Peer Review is designed as a forum where an insurer can challenge claims stemming from an automobile policy it deems medically unnecessary or not conforming to professional standards. The essence of the Peer Review process is the medical evaluation of disputed claims by a PRO, which is defined as follows:

> **"Peer Review Organization" or "PRO."** Any Peer Review Organization with which the Federal Health Care Financing Administration or the Commonwealth contracts for the medical review of Medicare or medical assistance services, or any health care review company, approved by the commissioner, that engages in peer review for the purpose of determining that medical and rehabilitation services are medically necessary and economically provided. The membership of any PRO utilized in connection with this chapter shall include representation from the profession whose services are subject to the review.

75 Pa.C.S.A. § 1702. Insurers are the only entity which can initially invoke the Peer Review process. 75 Pa.C.S.A. § 1797(b)(1). Indeed, the insurer has a contractual relation with the PRO. *Id.*

Although the statute does not mandate that the insurer invoke the Peer Review process, it does provide strong incentive for the insurer to do so. An insurer who decides to deny a claim without invoking the Peer Review process faces the potential for greater expense if the aggrieved party's claim is found medically necessary. If the insurer denies a claim without invoking the Peer Review process, the aggrieved party (either an insured or a medical provider) may take the dispute directly to court. 75 Pa.C.S.A. § 1797(b)(4). A determination against the insurer will result in the aggrieved party receiving *attorneys fees and costs*, along with the claim plus interest at 12%. 75 Pa.C.S.A. § 1797(b)(4). Moreover, in this forum conduct considered to be wanton can result in the payment of *treble damages* to the injured party. *Id.* However, if the insurer routes the claim into the Peer Review process, the insurer will only be liable when an adverse determination is made for the claim plus interest at 12%. 75 Pa.C.S.A. § 1797(b)(5). There is no provision for a PRO to provide treble damages for "wanton conduct."

Thus, it appears the statute is structured to push the insurer to submit claims it considers dubious into the Peer Review process. We believe the statutory design evidences an intention to make the Peer Review process the primary system for initially evaluating challenged insurance automobile policy medical claims. To accept the appellant's argument, we would have to provide insured individuals the unilateral right to circumvent the Peer Review process by allowing them to proceed at their inclination in a court of law. The statute does not lend itself to such an interpretation.[5]

---

5. The Concurring Opinion interprets § 1797(b)(7) to provide that an insured is insulated from an adverse determination by a PRO. The Concurrence believes that this subsection assigns liability for medical expenses either on the insurer or on the medical provider, thus holding an insured harmless for treatment alleged medically unnecessary. As perhaps this view helps inform its analysis that judicial review of a Peer Review determination has not been afforded, we address that interpretation presently.

Such an interpretation is contrary to the plain reading of § 1797. If, as the concurrence avers, an insured is never "aggrieved" because the function of Peer Review is to determine, between the insurer and the medical provider, who pays for medical expenses, why is the word

We next address appellant's argument that she was denied full and fair opportunity to respond to appellee's Motion to Dismiss. Appellant's position is that the appellee only designated its motion as a "Motion to Dismiss" instead of particularly designating it as Preliminary Objections in the nature of a Demurrer, a Motion for Summary Judgment, or a Motion for Judgment on the Pleadings. Appellant implies that this designation sandbagged her counsel into not responding forcefully enough to appellee's motion.

We reject this meritless argument out of hand. While surely the better practice would have been for the appellee to designate its motion with more particularity, we cannot accept counsel's protestations that he was in any way confused by the appellee's motion or at what stage of the litigation the motion was made. If the appellant's counsel was confused, it forms no basis for the grant of relief.

Our above dispositions indicate that the lower court properly granted appellee's Motion to Dismiss. We hold that once the Peer Review process is invoked, the parties must exhaust their statutory remedies in the Peer Review process. We also rule that there is no merit to appellant's argument that the Motion to Dismiss was made without affording a full and fair opportunity to be heard. Accordingly, we find sufficient basis to affirm the lower court's Order. Having so determined, we need not address the appellant's last two arguments, which address whether a court of law has judicial review of a PRO

"insured" even mentioned in § 1797? More specifically, why would the legislature in § 1797(b)(2) allow the *insured* to ask for reconsideration of an initial determination within the Peer Review Process? The answer to both questions is that there is at least one situation where the statute anticipates that the insured will need to invoke the Peer Review Process. Namely, the statute anticipates that the insured may be forced to submit a claim to the insurer in anticipation of future expenses. While not denying that an insured is held harmless under at least this one scenario, this is not true under *all* scenarios. There will be an occasion(s), as rightly recognized by the statute, when an insured will be aggrieved and need to pursue a claim in the Peer Review process.

determination.[6]

Order Affirmed.

DEL SOLE, J., files a concurring statement.

BROSKY, J., files a concurring opinion.

DEL SOLE, Judge, concurring.

I join the Majority Opinion authored by Judge Cavanaugh. However, I wish to point out that we have not decided whether an insurer which invokes the PRO process can seek judicial review from an adverse determination. That issue was not before this court.

BROSKY, Judge, concurring.

Appellant reasons that because a PRO is not an administrative agency, she is not required to follow the PRO review

6. We note that we do this because of a preference for affirming orders on the narrowest possible grounds rather than a belief that Peer Review process is not subject to judicial review after statutory remedies are exhausted. *See, e.g., PA. Chiropractic Federation v. Foster*, 136 Pa. Cmwlth. 465, 477–78, 583 A.2d 844, 850 (1990) (judicial review of PRO decision available). One would suppose that the extreme result of barring judicial review would be the occasion of serious legislative debate. *See, e.g., Hanna v. Philadelphia Asbestos Company*, 743 F.2d 996 (3rd Circuit 1984) (without clear evidence of legislative intent, statute should not be construed to preclude judicial review); *see also, Acme v. Weinberger*, 580 F.Supp. 490 (E.D.Pa.1984). The legislative debates concerning the 1990 amendments to the MVFRL do not give any indication that judicial access would be restricted. In fact, the legislative history suggests quite the contrary: the legislature had no intention of denying access to the courts in the 1990 amendments to the MVFRL. *See* 10 House Legislative Journal 213–5 (1990) (exchange between Rep. Kenney and Rep. Hayden) (legislation did not deny judicial review to uninsured motorists because of constitutional concern of eliminating a person's access to the courts).

We note that a denial of access to a court of law after the conclusion of the Peer Review process would raise serious constitutional problems, especially in light of the financial relationship between an insurer and PROs. *See Harcourt v. General Accident Ins. Co.*, 419 Pa.Super. 155, 161–63, 615 A.2d 71, 75 (1992) (noting that a PRO, because of its financial relationship with an insurer, is not an independent body). Contrary to the lower court's impression, moreover, 75 Pa.C.S.A. § 1797(b)(4) does not restrict access to a court of law by a party that has exhausted the Peer Review process. That section merely informs an insurer that if it declines to invoke the Peer Review process, an insured or medical provider will be able to proceed directly in a court of law.

procedure outlined in the statute before obtaining judicial review. This argument is premised on the assumption that the statute in question provides to appellant, as an insured, a vehicle by which to obtain judicial review. Appellant argues that if the statute does provide a method of obtaining judicial review of a PRO determination, this procedure is unduly restrictive in violation of due process. In this latter vein, appellant maintains that since the statute frames the request for reconsideration by an insured, an insurer or a provider of an unfavorable determination of a PRO in non-mandatory language, the failure of any aggrieved party to request reconsideration from a PRO does not bar the right to judicial review of this adverse determination. Appellant argues, alternatively, that the statute does not provide a right to judicial review. I agree with appellant insofar as the statute in question does not provide a forum for judicial review of a determination of a PRO.

The majority chooses not to address the question whether the statute at bar provides a forum for judicial review of a determination of a PRO "because of [its] preference for affirming orders on the narrowest possible grounds rather than a belief that Peer Review process is not subject to judicial review after statutory remedies are exhausted." Majority Opn. at p. 1038, note 6. In this vein, the majority also "note[s] that a denial of a [sic] access to a court of law after the conclusion of the Peer Review process would raise serious constitutional problems, especially in light of the financial relationship between an insurer and PROs." *Id.* However, I believe that the question whether the statute in controversy provides a forum for judicial review, and, if it does not, whether the lack of such forum violates due process goes to the heart of appellant's contention at bar. Since I consider this question pivotal, I concur only in the decision of the majority to affirm the Order of the trial court. My reasoning follows.

Section 1797(b) of the MVFRL, 42 Pa.C.S.A. § 1797(b), is entitled "Peer review plan for challenges to reasonableness

and necessity of treatment", and subsection (1) thereof describes the operation of the plan as follows:

(1) **Peer review plan.**—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to a PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment or services.

Section 1797(b) also contains two subsections relating to the methods by which challenges may be made to the medical necessity of health care services or products. Section 1797(b)(2) provides for reconsideration by a PRO of its initial determination. It reads in relevant part as follows:

(2) **PRO reconsideration.**—An insurer, provider or *insured* may request a reconsideration by the PRO of the PRO's initial determination. Such a request for reconsideration must be made within 30 days of the PRO's initial determination.

(Emphasis supplied.) Section 1797(b)(4) sets forth the condition under which a court may hear a challenge to an insurer's refusal to pay for health care services. This subsection states in pertinent part:

(4) **Appeal to court.**—A provider of medical treatment or rehabilitative services or merchandise or an *insured may challenge before a court* an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which *the insurer has not challenged before a PRO.*

(Emphasis supplied.) The Insurance Department regulation in effect during the time period here involved described the initial procedure by which an insurer could dispute the medical necessity of a health care provider's services or products and the subsequent method by which an insurer, a health care

provider or an insured might challenge a determination by a PRO. Former 31 Pa.Code § 68.2(c) provided in pertinent part:

(c) A property and casualty insurer that disputes a provider's bill for treatment or services may request that the bill be reviewed by a PRO. Following the PRO's initial determination, an insurer, provider or insured may request reconsideration of the decision.... If an insurer has not challenged the propriety of medical treatment or services, a provider may challenge an insurer's refusal to pay for the treatment in the courts of this Commonwealth. *The Insurance Department interprets Act 6* [Section 1797(b) ] *to permit that upon final determination by the PRO, an* insurer, provider or *insured may appeal the decision in court.*

20 Pa.Bull. at 2055. (Emphasis supplied.) I am also aware of two federal decisions which have reached the same interpretative conclusion. *See Elliott v. State Farm Mutual Automobile Insurance Co.,* 786 F.Supp. 487 (E.D.Pa.1992), and *Danton v. State Farm Mutual Insurance Co.,* 769 F.Supp. 174 (E.D.Pa. 1991). In like vein, the *Danton* court stated with respect to an insured's right to judicial review after an adverse determination by a PRO:

[T]he insured or provider still has the right to sue if the insurance company refuses to pay the provider's bill in full without consulting a PRO. Furthermore, *the insured still has the right to appeal the decision of the PRO to court if it is against the insured.* This route to the courts may be more indirect than [previous legislation allowed], but ultimately, *the insured* or provider *has the right to challenge the insurance company decision in court.*

769 F.Supp. at 176. (Emphasis supplied.)

My reading of Section 1797(b) leads me to conclude that its plain, unambiguous language does not provide for a forum for judicial review of a PRO determination and, therefore, does not lend itself to the interpretation cast upon it by the Insurance Department and the federal court. Moreover, the regulation of the Insurance Department interpreting Section

1797(b) to provide the right to judicial review of a PRO determination appears to be at odds with the plain language of the statute, itself, which is silent on this subject. It is well established that a regulation cannot be upheld if it is contrary to the statute under which it is promulgated. *Consulting Engineers Council of Pennsylvania v. The State Architects Licensure Board,* 522 Pa. 204, 560 A.2d 1375 (1989); *Commonwealth v. De Fusco,* 378 Pa.Super. 442, 549 A.2d 140 (1988), *appeal granted,* 522 Pa. 572, 559 A.2d 34 (1989), *appeal denied,* 523 Pa. 425, 567 A.2d 1043 (1990), and courts are not so bound to follow such contrary regulations. *Lookenbill v. Garrett,* 340 Pa.Super. 435, 490 A.2d 857 (1985). Where, as here, an apparent conflict or inconsistency between a statute and a regulation promulgated thereunder exists, the statute prevails. *Commonwealth v. De Fusco, supra; Tiani v. Commonwealth, Dept. of Public Welfare,* 86 Pa.Commw. 640, 486 A.2d 1016 (1985). Therefore, I am not bound to consider and hold as controlling this regulation or the decisions of the federal court which have adopted the interpretation of the Insurance Department with respect to a party's right to judicial review of a PRO determination, *see Lookenbill, supra,* since the regulation in question appears to be inconsistent and conflicts with the plain terms of the statute.[1]

To summarize, with respect to a PRO determination, the statute in question provides:

   1. When an insurer receives a request for payment of health care services or products, only the insurer may *initiate* a request for determination by a PRO of the medical necessity therefor. Section 1797(b)(1).

1. The majority cites 31 Pa.Code § 69.52(m) which it states is "a regulation promulgated by the Insurance Commissioner, [sic] which interprets § 1797 to allow for judicial review only after reconsideration by a PRO has been made." This regulation was not in effect at the time that the questioned services had been rendered. See 31 Pa.Code § 69.2 which provides in relevant part: "This chapter applies to insurer payments to providers for services rendered on and after November 30, 1991." This matter is academic, however, because of my belief that both the new regulation and the one in effect at the time that services were provided is contrary to the language in question. *See* pp. 95–99 in text.

2. After the PRO has made its determination as to the medical necessity or not of a health care service or product, the insurer, *or the insured* or the provider *may,* not must, request the PRO to reconsider the matter. Section 1797(b)(2).

3. If, however, the insurer does not initiate a request with a PRO for a determination of the medical necessity of a health care service or product, then and only then may the the *insured* or the provider *initiate* a proceeding *in court* challenging the insurer's refusal to pay for the health care service or product. Section 1797(b)(4).

To reiterate, the statute does not provide for further review of a PRO determination by a court. If no reconsideration of an initial determination of a PRO is sought by the insurer, the insured or the provider, that determination is final and binding upon the parties. If any one of the parties—insurer, insured or provider—requests reconsideration by a PRO of its initial determination, the PRO's decision upon reconsideration is likewise final and binding upon all parties. Resort to a court of record may only be employed to obtain relief by an insured or a provider where the insurer (1) refuses to pay a health provider's bill *and* (2) *has not* challenged the medical necessity of this bill before a PRO. The fact that the heading to Section 1797(b)(4) reads *"Appeal* to court", we think, is not misleading. The plain language within the text of this subsection makes it obvious that an appeal in the context of a judicial review is not to be understood therefrom. I believe, moreover, that my refusal to embrace this interpretation of Section 1797(b) is consistent with the purpose of the MVFRL, which is to reduce the escalating costs of motor vehicle insurance. *Lambert v. McClure,* 407 Pa.Super. 257, 595 A.2d 629 (1991).

The function of a PRO is to evaluate "treatment, health care services, products or accommodations provided to any injured person." Section 1797(b)(1). The purpose of such evaluation is to "confirm[ ] that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." *Id.* Hence, the function of a PRO is not to make policy. Rather, the role of

the PRO is to factually determine whether a service or a product was medically necessary and whether it conformed to professional standards of performance. *Pennsylvania Chiropractic Federation v. Foster*, 136 Pa.Commw. 465, 583 A.2d 844 (1990).

If reconsideration is requested concerning "the services of a physician or other licensed health care professional, then the reviewing individual must be, or the reviewing panel must include an individual in the same specialty as the individual subject to review." Section 1797(b)(2). Hence, the statute provides that the person or the panel making the determination of medical necessity must be or must include not simply a licensed health care professional but, rather, one whose specialty is the same as the one whose service or product is being reviewed. The Legislature has determined that a licensed health care professional in the same specialty as the one whose service or product is the subject of review is in the best position to evaluate the medical necessity therefor. Thus, the insurer and the insured are protected against hasty and/or uninformed decision making by non-experts.

In the event an insurer refuses to make payment for a health care provider's services or products and does not submit the claim to a PRO for evaluation, then the insured or the provider may institute a cause of action against the insurer in a court for such refusal of payment. Section 1797(b)(4). The Legislature, in its wisdom, has decided that the insurer must first be given the opportunity to avail itself of the expertise of a PRO. If the insurer fails to avail itself of this opportunity, the insured or the provider, to whom the Legislature has not accorded the right to initiate a challenge before a PRO, may seek to invoke the protection of a court of record from an insurer's unilateral determination of the non-necessity of a medical service or product.

However, I query why appellant expresses concern that the statute in question either restricts or makes no provision for judicial review of a PRO determination adverse to her, for the statute contains a provision which our examination thereof has

led me to conclude insulates an insured, like appellant, from such adverse determination. Section 1797(b)(7) provides:

**Determination in favor of insurer.**—If it is determined by a PRO or court that a provider has provided unnecessary medical treatment or rehabilitative services or merchandise or that future provision of such treatment, services or merchandise will be unnecessary, or both, *the provider may not collect payment* for the medically unnecessary treatment, services or merchandise. If the provider has collected such payment, it must return the amount paid plus interest at 12% per year within 30 days. *In no case does the failure of the provider to return the payment obligate the insured to assume responsibility for payment* for the treatment, services or merchandise.

Emphasis supplied.

Hence, if a PRO determines that a service or product is medically unnecessary, the provider thereof may not collect payment. I interpret this to mean that the provider is barred from collecting from the insurer as well as from the insured. I am mindful that the purpose of the MVFRL is to reduce the escalation of motor vehicle insurance costs to the consumer. *Lambert, supra.* It would be doing violence to the intent of the Legislature to protect the consumer against the rising costs of automobile insurance were it to be the case that the provider would be able to look to the insured for payment of services or products which were determined to have been medically unnecessary in the first instance. If an insured is not required to reimburse the insurer in the event the provider of medically unnecessary services or products refuses to return payment made to it by the insurer, it does not logically follow that an insured should be required to compensate a provider for medically unnecessary services or products, either.

The majority expresses concern in footnote number five that a situation may exist where "the insured may be forced to submit a claim to the insurer in anticipation of future expenses." Majority Opn., p. 103, note 5. The majority anticipates that the insured will not be held harmless by Section

1797(b)(7) in that event. The short response to that concern is that the scenario described by the majority in footnote five is not presently before us. However, the ultimate decision rendered by the majority appears to rest upon this speculative scenario and is, therefore, in the nature of an advisory opinion.

In footnote number six, the majority states that it is refraining from a discussion of whether the Section 1797(b) provides for judicial review "because of a preference for affirming orders on the narrowest possible grounds rather than a belief that Peer Review process is not subject to judicial review after statutory remedies are exhausted." Majority Opn., p. 104, note 6. The majority then expresses concern that the lack of a procedure for judicial review following exhaustion of the peer review process would pose serious constitutional problems and correctly notes that the statute in question does not restrict judicial review, since a provider may challenge in court the insurer's refusal to pay medical expenses if the insurer fails to invoke the peer review process. *See* Section 1797(b)(4). However, the majority also notes, incorrectly in my view, that an insured may also proceed to court. As I have already exhaustively discussed elsewhere in this concurring opinion, the statute does not provide to an insured a forum for judicial review of non-payment of his/her medical expenses because of the insulating provisions of Section 1797(b)(7). *See* pp. 100–103, *supra.* My position in this regard is further bolstered by the language of Section 1797(a) which provides in relevant part:

(a) **General rule.**—A person or institution providing treatment, accommodations, products or services to an injured person for an injury covered by liability or uninsured and underinsured benefits or first party medical benefits, including extraordinary medical benefits, for a motor vehicle described in Subchapter B [footnote omitted] ... shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups

(DRG) payment; whichever pertains to the speciality service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the services were rendered, or the provider's usual and customary charge, whichever is less. The General Assembly finds that the reimbursement allowances applicable in the Commonwealth under the Medicare program are an appropriate basis to calculate payment for treatments, accommodations, products or services for injuries covered by liability or uninsured and underinsured benefits or first party medical benefits insurance.... *Providers subject to this section may not bill the insured directly but must bill the insurer for a determination of the amount payable. The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer.*

Emphasis supplied.

Thus, unlike the majority, I can imagine *no* scenario where an insured will not be held harmless and, in keeping with the factual scenario actually before this court, the insured in this case has no need to resort to the judicial process to resolve her claim. The majority's imagined scenario which it relates in its footnote number five, *supra,* will never come to fruition because, pursuant to Section 1797(a), it is the provider who must submit the claim to the insurer. The insured will never be in the position of having to pay the provider "up front." Nor will the insured be harmed by the insurer's refusal to pay for future treatment or a series of treatments based upon a peer review determination of medical non-necessity because the statute bars the provider from billing an insured for any service or product ultimately determined to be medically unnecessary. Thus, it is apparent to me that Section 1797(a) and (b)(7) complement each other and provide for consistency of interpretation. I also believe that Section 1797(a) and (b)(7) provides the answer to the question why the statute does not provide to an insured a forum for judicial review of an adverse determination of a PRO. Simply put, within the framework of Section 1797, an insurer has no standing to challenge a PRO's

determination because the administrative procedures of submission of bills and issuance of payment thereof involve an interplay between only two parties—i.e., the provider and the insurer.[2]

I would affirm the Order in question for the reasons set forth above.

2. Appellant similarly lacks standing to make this argument on behalf of the health care providers here involved, since none of these individuals or entities is/are (a) party/ies to this action.